319-0473 Country Mutual Insurance Co. vs. Township Officials of Illinois Risk Management Your Honor, there appears to your ahead. Thank you, your Honor. May it please the Court and Counsel, Your Honors, my name is Tom Costello, and I represent the appellants in this proceeding. James Roder and the Township Officials of Illinois Risk Management Association, which you'll probably all thank me for it's not referring to is TORMA, for short, my forward. I'll show up most of my time just saying the name more than once. But so what we have before your honors this afternoon is always intellectually stimulating insurance coverage matter. But the issues are relatively simple at their heart. If the application of the legal doctrines is somewhat complex, when you get into the nitty gritty, What we have is a scenario where our client, James Roder, was sued in an underlying action by a, he was a tenant farmer of a property in Grundy County, and was alleged to have taken actions on his own property and the plaintiff's adjoining property that changed the flow of water. The underlying plaintiff alleged that as a result of these actions, his farm was damaged and, you know, he's had an organic farm and lost the organic, or was at risk of losing the organic certification because the water flowed and brought, you know, other herbicides and chemicals onto his farm property. So, country insured Mr. Roder for his farming activities on a farm liability policy. The underlying case originally involved another neighboring farmer named Mr. Frobisch, who country insured under a policy for his own farm that had essentially the same provisions as the one they issued to Mr. Roder. Now, the underlying complaint had numerous counts and it alleged in the alternative that Mr. Roder took some of these actions as his, in his capacity as Township Highway Commissioner. But the count issue was the underlying count four that specifically alleged he was liable as a neighboring farm tenant. And count four was distinguishable in that it alleged Mr. Roder's actions not only were taken under the guise of his role as Highway Commissioner, but also violated an easement agreement between the underlying plaintiff and Mr. Roder's farm property for, you know, water flow. So, essentially, in essence, he wore two hats according to the allegations of the underlying complaint. Procedurally, the underlying trial court ultimately ruled that country owed a duty to defend both Mr. Frobisch and Mr. Roder based on the allegations of their actions taken as farmers. Country did defend and paid for the defense of Mr. Frobisch, and that's not part of the appeal. What they didn't do for some inexplicable reason is they never agreed to provide, participate, or pay a dime towards the defense of Mr. Roder. And as a result, TORMA stepped in and provided his defense and has been providing his defense on its own. Country filed the DEC action. We filed a motion for judgment on the pleadings on behalf of Mr. Roder, arguing that country did indeed owe a duty to defend. And on behalf of TORMA saying, look, country's coverage provided a duty to defend and country owed a primary obligation. One of the things that is not in dispute based on the briefs, Your Honors, is that the general principle of Illinois law that where an insurer owes a duty to defend any count or claim of an underlying complaint, they owe a duty to defend the entire complaint. As a result, even though Mr. Roder was only alleged in some of the counts who have been acting as a highway commissioner, TORMA defended him as to the entirety of the complaint. Country, in owing a duty to defend Mr. Roder, was required to do the same thing. So then the question became, well, how do you determine TORMA's obligation as compared to country's obligation? And there's a lot of case law in the briefs, and we'll talk about it in a minute, how that's done. We filed a motion for judgment on the pleadings at the trial court level asking the court to find, one, country owed a duty to defend Mr. Roder. Two, their obligation was primary. And three, they owed reimbursement of the defense costs that TORMA had paid because country had refused to do so. The trial judge ruled correctly that country did owe a duty to defend based on that count four. But the reason for the appeal is that the trial court's ruling then, I think, respectfully got it wrong as far as what the scope of that duty to defend was. One of the points that we make, and it's an important one, is that the issue of country owing a duty to defend was determined by the trial court, and that has not been appealed. We did not challenge the trial court's finding that country owes a duty to defend. We only challenged what the impact of that finding is and what the scope of country's obligation is. What's your position as to the scope? I'm sorry? What is your position as to the scope? Well, my position as to the scope is that country owes a duty to defend the entirety of the complaint. The trial court got it wrong by saying that country only had to defend on a pro rata basis whatever count alleged that Mr. Roder acted as a private farmer. So, one count out of the three. Illinois law is clear in providing, again, that when an insurer owes a duty to defend, if it's only based on one count, it has to defend the entire complaint. That's based on the Pekin v. Wilson and its project. We cite and discuss that in the briefs. The issue that we have procedurally is that country in their response brief argues, well, we don't owe a duty to defend, but they didn't file any notice of appeal or cross appeal on that point. And we cite case law that supports our position. They've waived that, and that's not part of the appeal, and that the duty to defend is not a law of the case. That's the Dundee Township v. Illinois Department of Revenue case. It's a second district decision in 2001 where a township sought a tax exemption for property that it leased and ended up in a suit against the Department of Revenue. The department challenged at the trial court level whether the township had standing, and the court found that it did, but it didn't enjoy the tax exemption. The township appealed, and the Department of Revenue on appeal argued they didn't have standing, just as they had at the trial court level. But the appellate court found that because the Department of Revenue had not filed a notice of cross appeal, it had not preserved that issue for appeal. So, a similar situation here is that the duty to defend is the law of the case. The country spends a lot of the argument in its response brief arguing they didn't owe a duty to defend to begin with, which, one, is incorrect, as we explained in our reply brief. But, two, I don't think that issue is properly preserved. So, where that leaves us is they owe a duty to defend. Illinois law provides that they have to defend the entire complaint. So, how does that obligation compare with TORMA's obligation? Well, TORMA is a risk pool made up of contributions from the various public entities. So, it's a form of self-insurance pool. A country's policy says it will be primary unless there is other valid collectible insurance, at which point it says it would be excess, unless that other policy was written expressly to apply on an excess basis compared to country. So, two things can occur where country is primary. One, there's no other valid and collectible insurance. Or, two, if there is other insurance, it's written to apply expressly excess to whatever insurance country provides. The problem for country is there is no other insurance. They argue that TORMA's risk pool constitutes other insurance, but all of the case law, including the case law they cite, says that's wrong. Particularly the case of State Farm versus DuPage County. 2011 Second District case that addressed the issue and the argument from State Farm that DuPage County is a self-insured public entity would be other insurance to which State Farm would be excess. All of the case law that addresses whether IML, IRMA, or a self-insured entity such as DuPage County's insurance have uniformly and unwaveringly decided it is not insurance. How does that impact this case? Well, TORMA's coverage is not other insurance. So, country has no other valid and collectible insurance to which they would be excess. As a result, they owe primary coverage and a primary duty to defend. Mr. Costello, is there a Supreme Court case that establishes that principle? A Supreme Court case? I'm not sure if there's a Supreme Court case that has reached that issue. Your Honor, there's no case that has held the opposite. If you look at country's response brief, the case that they tried to cite to support their argument that TORMA should be considered other insurance is a State Farm versus DuPage County case, which I can't understand why they cited that because it was the opposite scenario to what we have here. Whereas State Farm was country there, State Farm paid the whole way for defense and indemnity, and then tried to collect back against DuPage County. And the appellate court found, well, DuPage County is not other insurance. So, they can't collect against DuPage County. Well, how uniform, if there is no Supreme Court case on that point of law, how widespread in districts of the appellate court is that principle articulated and upheld? Well, in our briefs, Your Honor, we cite about four or five different cases that have all addressed the issue and have all come out the same way. I mean, Euclid is one and State Farm versus DuPage County is another. How about the third district, Mr. Costello? Your Honor, I haven't seen the third district directly take up that issue. I don't understand any public policy that would lead Your Honors to decide it any differently than the other appellate court districts have decided it. Because as they explain, the driving public policy behind those decisions was the importance of preserving public funds. And so, the idea here is that we have a contractual basis by which country has volunteered that their coverage would be primary. And there's no other insurance that would permit the country to pass the buck or share the obligation with PORMA. And I think if you look at some of the public policy behind the Tort Immunity Act, Your Honor, you're probably familiar with some of this. Some of the case law addressing whether townships or entities getting into a risk management pool would constitute getting insurance that would waive some of the tort immunities. Some of the decisions, which may have included a third district decision, I'd have to get back to you on that, looked at that and said, well, risk management pools is not insurance. This is still the public entity's own funds. So, the public policy is to protect and preserve public funds. So, where does that leave us? Well, country owes a duty to defend. They have to defend the entire complaint. And then they have to be the primary source of coverage because there's no other coverage to which they can be accessed. So, what happens now? PORMA has paid every penny of the defense for Mr. Roeder, whereas country is owed a duty to defend and has paid nothing. So, we included a claim in our counterclaim to country's complaint asking for reimbursement of all of those defense costs. And this is where a lot of the space in the appellate briefs is also dedicated, Your Honor. It says, well, what theories or what legal remedies are available to allow recovery of that? Well, I think there are two that apply here. Is that on appeal here, Mr. Costello? Yes. Yes, Your Honor, it is. One of the issues that we raised on appeal is country's obligation to reimburse PORMA for the defense costs that PORMA has been forced to incur defending Mr. Roeder. And so, that was ruled on by the circuit court. The circuit court really didn't make a ruling despite that issue being addressed in the motion for judgment on the pleadings. And then, again, in the motion to reconsider. I think arguably you can say the trial court addressed it by saying each of PORMA and country have to provide a pro-rata share of coverage to Mr. Roeder, depending on the counts that were, you know, addressed to him as a highway commissioner versus as a farmer. But if that was addressed by the trial court, we don't believe that the trial court addressed it correctly. So, that's why in our briefs we addressed two theories, one of reimbursement and one of equitable subrogation. The driving principle behind the two of them is relatively similar, which is that one party in those cases involved insurers. But here we're talking about one insurer and then one risk management pool. But the issue is the cost of defending a member on the one hand and insured on the other. So, the legal theory should apply equally to the both. Under either of them, if one party that didn't owe the obligation or would be excess to the other had to pay it, it can pursue reimbursement of that amount from the primarily responsible entity. And here that would be country. The elements are pretty similar and we discuss them in more detail in the briefs. I'm happy to answer questions, but I will try to keep it simple and not get into the legal nitty gritty about when reimbursement would apply or when equitable subrogation would apply. So, we're really inferring a point you brought up on appeal because it wasn't a ruling by the trial court? Well, it was an omission of a specific ruling, but I think when the court ruled that each party, torment and country, had to provide a pro rata share of coverage, that would be basically the ruling on the issue of reimbursement. It did not rule that we were entitled to any reimbursement specifically by a monetary amount, but that's one of the reasons that we moved for reconsideration and the court just simply denied the motion for reconsideration. One issue that was addressed was whether it's a final and appealable ruling. We address that in the briefs, but I also note that the circuit court docket shows that the July 2019 order was final and disposed of the case. So, I think it's properly up on appeal, your honor. But, essentially, we had to pay the whole boat. We didn't owe it. Country owed the whole thing. Country is obligated to reimburse us. In the Shell-Bovis case with the theory of reimbursement or home insurance with the theory of equitable subrogation, both provide available avenues to get there. Thank you, your honors. Thank you, Mr. Stahler. Mr. Carlson. Good afternoon, your honors and counsel. Thank you, Keith Carlson, for Country Mutual. First, I do want to mention at the very beginning that, yes, there are a number of rulings the trial court didn't make, and that's why we don't think that there was a properly appealable order. There wasn't a finding that it was appealable or final. Among other things, didn't finalize whatever defense that they found that Korma owed in any dollar amounts. It didn't address the indemnity issue that was raised in the case. It didn't make rulings, as counsel has conceded, on some of the issues. So, really, this appeal is not properly before this court at this time. But, oh, and Country Mutual, though, in this case, did file a declaratory judgment action at the very beginning when it was tendered this lawsuit. So, the reason it filed the declaratory judgment, Country had, there are two radically different types of policies here. One, with Country, Mr. Roeder had a farm insurance policy, similar to a homeowner's insurance policy, that provides coverage for bodily injury and property damage caused by an occurrence subject to certain exclusions. Korma insured the township and its officials, members, for wrongful acts that caused losses as defined in the policy. So, that's, and the reason I'm emphasizing that is that that's an essential distinction in all these cases. All these, the other cases that counsel cites on municipalities or self-insureds or other things, they almost always, they all involve where the insurers insure the same loss or damage. For example, in a car accident, they insured for the bodily injury or property damage arising from the car accident. That's why we would never be providing insurance for the wrongful acts of Mr. Roeder as a township, in his township capacity, so you can't, you're putting on apples and oranges. All the other cases was a question of like construction cases with contractors where someone additionally insured someone for the same type of coverage for property damage caused by an occurrence. Here we have different coverage. They don't insure him for his property damage caused by an occurrence. They insure him for his wrongful acts in a township capacity that caused losses as defined. So, we would never owe the same things, no matter what the allegations were, because there's different risks, different losses. So, that's why none of those cases are applicable to this matter. We did, there is an appeal that they initiated on the duty to defend issue, and court found partially against them, and we're defending that appeal, pointing out why we think it's not a final order of property appeal, but if it is, why the trial court either correctly ruled in part, but also correctly did not shouldn't have found any duty to defend my country. And the principal reason again as I say, where's your cross appeal Mr Carlson. Well, we didn't file a cross appeal because I don't think in that case in the case law that and the cross appeals, where there's partial relief against the you don't have to file a cross appeal, where the, where you're, where it's involved in the same issue that is being appealed from. And that's why the appellate courts allow that for any reason in the record to affirm the appeal so we're not raising a different issue, a different appellate grounds were addressing the same issues that they're raising, but why out of that same course so that's why there is not a requirement that there be a cross appeal. Well, let me ask you this is this case seems. It's a deck declaratory judgment action, isn't it. Yes. Okay. And you've got a decision against you, so to speak, on count for correct. Oh yeah partial ruling yes, yes. Well, you're going to have to defend on count for according to the trial court. Well we've, it's not a final order we we've filed a declaratory judgment action that hasn't had a final order so, and then it was appealed from and we're now before the court here to decide whether that was correct or not. Well, yeah the appellant has brought the issue before us but why wouldn't you file a cross appeal I'm just curious, because it didn't. Well, it didn't seem necessary because it's the very issue of the duty to defend is already before the court on the ruling from the trial court by their by their appeal. So you don't every time that someone files. I just my experience that people don't both side when one party, when there's a duty to defend ruling is appealed from there's not a cross appeal. When, when the issue is already before the court by the appeal. Okay. And I think that's addressed in the cases when you look at the case like he cited that where there's relief against. If there was only relief against country, then, then that would make the net would make sense but there, there isn't. Here we have this. We have an underlying lawsuit again that point out only seeks basically injunctive relief, it doesn't even seek property damage caused by an occurrence, it seeks an injunction against Mr rotor, but getting to the account that is crucial to this to their argument. Count for where they start to focus on the label of neighbor injunction against neighboring farm operator for breach of easement agreement. The actions taken. It's just the fact that Mr rotor might also be a farm owner nearby doesn't mean that he can't have engaged in conduct as a township official it. The fact that he may be engaged in township official that benefited him personally doesn't delete from the fact that it's alleged that he only did the violated the easement agreement by causing one of his, one of their employees to enter the property without permission and excavate and dig a ditch out. So, it's specifically alleged that in his capacity as good firm good farm township highway commissioner. He intentionally had someone do the conduct the, the intentional conduct that allegedly led to him filing a request for injunctive relief and suing the, the. Mr rotor, who was acting as alleged in the complaint as his capacity as a township official. The business exclusion of the policy. The reason why it applies is because, of course, you wouldn't have to get to the exclusion if there wasn't potential covered in the first place so you first has to believe that there is some potential coverage that the property damage caused by an occurrence, but even you concluded that that are conceded that the business exclusion applies to any property damage arising out of, or in connection with a business engaged in by an insurer. So, and the business is defined as any trade occupation profession. And here, which includes this occupation of township commissioner. So, if it arises out of or in connection with his township commissioner role, it's excluded, no matter what, that's why. And that's all it's specifically alleged that's the only capacity that's how he did this because he was able because he was a township commissioner, and it's alleged that he did it in that capacity. Oh, it was actually a highway commission highway commissioners. Yeah. No, no other capacity. Mr Carlson I have a question. I think I heard you say that Mr radar or rotor was a farm owner. That's contrary to the allegations of the complaint. The complaint alleges he's merely a tenant with the apparent authority of the farm owners, being the campus. And in my. You're right, he's, he's alleged to be a tenant farmer, and he had a farm policy with country that covered him for potential property damage caused by an occurrence, so the easement agreement that apparently was violated was Mr radar, a party to that easement agreement. I, I believe he. I'm not actually sure about the I don't think he was, but I've looked at the record and I don't think he was either. And I don't think he was either. So, I'm struggling with why he would. I'm just struggling with why he would have violated his own personal promise to allow access to land. When the land isn't his, and he didn't sign the agreement. But I'll struggle with that on my, I make a good point your honor and I. That's another reason why I think it's just maybe seeking injunctive relief because seeking to enforce something that might be really maybe as a beneficiary or whatever. Or maybe trying to argue that it should be extend to him as a, as the VC of the property but right now. Count four of the underlying chancery action alleges that Mr rotor directed Mr. Wilkinson to dig out the ditch was Mr. Wilkinson alleged to be an employee of the farm, or associated with the highway commission. No, he's part of the highway commission. He's a private business that hired by the paid for by the taxpayers of the, of the community. They. It was. And you see that in the, the letter, or on the other accounts that from the attorney for the township township, who makes the threats against Mr. Severson that what they'll do if they don't, you know, comply with their would comply with their demands, and that the township you know that he's the attorney for the township he's acting on behalf of the township. He's. I think you've answered my question I appreciate your indulgence. Sure, thank you. And then we get to the other issue you know one of the several issues but this issue constantly of. Okay, we want to apply insurance principles but we're not insurance where you know where we are insurance sometimes but sometimes we're not insurance. In any event, they, when they claim that their excess. Again, this is for different risks, so we're not. It's not like one level, it's not like to auto policies covering risks from the same auto accident for bodily injury, and is one primary other So these are two different risk of the wrongful acts of employee township official first farmers property damage caused by an occurrence. They, they admit the fact that their own policy doesn't even say that their access under those circumstances, they're only your policy only says their excess when it's a township itself that soon not one of the members of the township there, so their insurance is primary by its own terms, because it has no excess provision in it countries policy does have an excess provision in it. And this gets to also the other issues of subrogation and equitable contribution or subrogation which basically, there's no real just theory of reimbursement in home versus Cincinnati the Supreme Court set forth the theories of equitable contribution subrogation and identification, you wouldn't need to have separate theories, if you just had a reimbursement theory you just have one reimbursement I'm seeking money from you because you owe it before me. We have no relationship with Torma country mutual does, there's no identification possibility there's no fiduciary relationship there. We can't meet any of the elements of, you know, equitable contribution or subrogation they're not, which sometimes require one to be a primary insurer versus an excess insurer, they say they're not insurance, but more often, more, more importantly, whether you're looking at the same loss or same risk insured. The cases that they cite go to the issue of where it is the same loss, it's the same property damage caused by an occurrence to that building that was being constructed or here, we don't again I'm repeating myself about the wrongful acts are what's covered policy which the court found were alleged here for hit, which is not the coverage under the country policy so you can't have. It's not there's can't be one over the other because they're apples and oranges. They're different. And that's, again, it gets to the whole, the whole line is this is a rather unusual situation because all those cases involve virtually the same risk or same losses. And here, they're not. So none of those, that's why Torma, none of the cases that apply a lot of theories, allow it a method of recovery for the money it owes to its members for its alleged wrongful acts, sought to help for Mr. in his capacity as the township highway commissioner, which he caused other people to do intentional acts that cause this situation for which only injunctive relief is sought. So, I believe for all those reasons that the court if it doesn't dismiss the appeal for not being a proper people order that it should find that the country that only Torma owes coverage for Mr rotor in this case for his wrongful acts in his capacity as township commissioner that country doesn't know any potential coverage for Mr rotor in that capacity in our connection with this lawsuit. Okay, miss. I have a question as to Carlson, if you don't mind here. And it's based on what was raised by justice right so that this count for which was a claim and allegation against rotor that he violated measement right right. Okay. And you're saying that that violation could only have been in the capacity of order order as a highway commissioner township highway commissioner. Well, I didn't say only I mean it's alleged that he did it in that capacity. So, it's alleged people can obviously individuals anytime someone's operating a business they also are an individual and if they do a conduct. You could say that they were like saying a whole, this is like a homeowner's policy that they have the same business exclusion. If someone was operating a business, and they cause bodily injury to someone, they would normally be covered, but the fact that they're operating a business, they're alleged to operate a business so it's like my question is rotor apparently is a tenant farmer on ground next to Severson is that the factual. Yes. Okay. And, and this whole action, and the easement doesn't involve anything except the easement to allow drainage to flow over Mr Severson's property. Correct. Right. Okay. And, yes, and here. So, since the exclusion applies to any conduct arising out of or in connection with the business and it's alleged that he did it all, it's only allegedly the only way he did it. He did it in his capacity as township commissioner it highway Commissioner Highway Commission. Mr Carlson, I don't want to jump all over you but I'm going to count for of the complaint in the CH case does allege that Mr rotor was acting in his capacity as a parent agent of the campers are the campers insured by country mutual. No. So if he was acting as an agent for them, or as a highway commissioner. How, how does the judge make a finding that there's some sort of Mr rotor has violated agreements that he was a party to, which is on page, a two of the appendix. So, I'm just wondering, isn't it. There's a factual inconsistency here in the complaint, and the judges findings. Yeah, I guess I would agree, Your Honor with that I mean I don't really have the, the answer that maybe everything wasn't addressed proper that probably gets to the fact that maybe this was too early and appeal here before these issues were resolved. Because now no matter what if you and if you ruled against country you'd have to on this record have to be sending it back for further proceedings. I don't. Because there's other questions that wouldn't be the question is duty to defend and the campers don't have a policy, and the highway commission has a policy. They're self insured but I don't see that country is involved at all. With the campers you're being your honor. Yeah, yeah, no they're not. They don't, they wouldn't they don't ensure the campers so they wouldn't be the complaint clearly alleges he was acting as an agent, not in his personal capacity, but I'll look at the complaint I'll take into consideration your answers, and I appreciate your input. Thank you. Thank you, Judge. Are there any more questions. You have a response. Yes, thank you, Your Honor, I'll make this brief, there are a couple points I wanted to touch on justice right first off I wanted to touch base on your questions about how does the country policy for Mr rotors a farmer get involved. Here is my view on how and where I think the trial judge got this right. So count for alleges that Mr rotor is the one farming, the adjacent property next to the underlying plaintiff Seberson, and it alleges that by virtue of his being the tenant farmer. He therefore became bound by the terms of that easement because if you look at paragraph five of count for it alleges that as the tenant operator of that farm. That's the dominant tenement and the easement agreement and rotor operates and maintains the drainage apparatus, essentially to carry out the agreement that was reached in that easement. So, who was the agreement with. Well, the agreement was between the farm owners themselves but the campers are not farming the land, and so the to get to Mr rotor. The plaintiff alleged that Mr rotor was acting as the campers agent when he was farming the property. And as such, violated the terms of that easement agreement so essentially the plaintiff alleged the terms of the easement we're binding on Mr rotor because he was a tenant farmer and an agent of the campers. And that's what gets us to one of the fundamental principles of a duty to defend is that the court is required to take the allegations of the complaint, as if they were true and determine well if this is these allegations were true doesn't potentially fall within the coverage of the policy, and clearly it does, because we can all debate whether ultimately the plaintiff stuffers that would be able to prevail on this claim that the easement was binding on Mr rotor, and that he could be liable for a about a business pursuits exclusion. Well, what he doesn't mention is that the business pursuits exclusion says this does not include farming. Why it's a farming liability policy. So, really we're getting into questions about what can the plaintiff servers and ultimately prevail on this allegation that the easement applies to him. And my response to that is respectfully your honors we need to ignore that and determine if that were true would it fall within the policy. Clearly it does. But again, respectfully, I in your honor Justice Holder I think you properly asked the question to the country's Council, where is the cross appeal. The answer cannot be well we didn't think this was a proper appeal so we opted not to appeal that the only issue that's on appeal is Mr rotors and torments appeal of the decision that the duty to defend was limited to a pro rata share of the defense based on the counts. So that's all that's up on appeal. With regard to the issue of how we can recover the amounts of trauma paid to defend Mr rotor when country was ordered to do that and refuse to do so, even back in 2018 when the court ordered you have a duty to defend that may not have been a final order at that time, but if one of your honors orders me to file an answer or a supplemental statement. I'm going to do it. I have to follow your orders whether they're final or not, whether or not they're appealable is a separate question here, the trial court created its own order is final and appealable it closed the case down the docket is closed as a final order but entered in July of 2019, we have to take the cases that exists and examine the propriety of the orders that the trial court entered in determining that that was final and disposed of the case, but to agree with any of countries arguments about well none of these legal doctrines would apply and allow reimbursement because Torma is not an insurer. When none of the case law requires that the parties, owing the defense obligation be an insurer versus a risk management pool versus a self insured entity would be to say country, you didn't follow the judge's order, you were ordered to provide a defense three years ago you've done nothing you've paid nothing you've done nothing to participate in the defense, it's to condone that and say that you know because they waited until final order was entered and appealed it, they weren't bound to follow the court's order, or now. Yeah, they violated the court's order and the court was correct in finding they owed a duty to defend, but there's no avenue for the party that paid the entirety of the defense, when it wasn't supposed to required to can't get any of that money back from the party country that was required to provide the defense. That's not what the law provides that's not what the importer the intent of the cases was, and it's not the way it is. Thank you. So I do have a question for you. With regard to the easement itself, what, what did the easement provide for as as I read it, it allowed the party on the second part which is now that I believe the campers to trespass on to the Spencer's property to maintain a tile that is on the Spencer's property. So, it doesn't even discuss the ditch or prohibiting trespass on to the other property. So where the ditch is located, how if the easement itself doesn't talk about water flow, or. Why are we here. Well, why and respectfully, Your Honor, I have to maintain my position that that issue isn't here. That was never appealed and all that but assuming it is before you. We have to go with what's alleged in the complaint in your questions are excellent ones that I cannot answer because there's not enough detail and what is alleged to answer those We have to deal with what's alleged which is that there was this easement. The terms of the easement didn't permit the, the physical changes to the land that are alleged that the physical changes to the land that were taken, taken out by Mr rotor and his capacity as a farmer. In addition to using his authority as a township highway commissioner to do so, violated the terms of that easement agreement. These are all excellent questions that would be part and parcel of the defense of this count and the underlying case, and the answers to those would be certainly relevant to whether into what extent there would ultimately be any duty to indemnify. Isn't the hook here though count for absolutely and the allegation that Mr rotor was a farmer, that he was a tenant farmer. That was an apparent agent of the owners of the farm, and that in his role as the tenant farmer and agent he was bound by the terms and thus violated the terms of this easement when he did what he was alleged to do. That's the hook and that's where I feel like you're struggling your honor to find the connection. If he wasn't a named party to that easement. How in the world could he be liable for violating that easement. But my response is that we don't know and can't know but respectfully we have to assume that it can because of what the court is required and asked to do when evaluating whether a duty to defend is owed. That's a question for a duty to indemnify wasn't attached as an exhibit to the complaint, though, as Exhibit D. Right. Yes, it is but I think you can be violated, you can be liable for violating an easement if you're acting as an agent of the parties to that easement, I mean the easement is a covenant that runs. I don't dispute that at all. That doesn't give you the hook for the personal actions of Mr Rader, which is what country is going to ensure him for whatever he did in his capacity as the farmer, the tenant farmer. I must just respectfully disagree entirely with that. Sure, because they allege that he is the one farming the property, he's not necessarily party to the easement but they implicitly allege that he is bound by and is responsible for fulfilling the terms of that easement. I mean they say there's this easement they say who's party to the easement, they then say that he's an agent of one of the parties to that easement, they say that his role as a farmer includes doing things such as maintaining the drainage apparatus. That is the part and parcel of that easement, and that he's then liable for taking actions that reach the terms of that easement. Okay, I thanks for clearing that up for me, I'm not sure that I agree with you that maintaining the drainage is the part of the easement, but I will study the easement, I promise you I will study it. Well, and if the allegations of the complaint, do not necessarily match up with the provisions of the easement again I respectfully have to reiterate that that goes to whether or not there's ultimately a duty to indemnify that's a question of whether or not Mr rotors ultimately going to be able to be held liable for breaching the easement. That's a matter for the underlying court to determine as an issue of liability or an underlying jury or whatever, however, it ends up being adjudicated. What we have to look at is if these allegations are proven true would it potentially fall within the coverage of the country policy, and clearly it would it alleges that he's acting as a farmer. Okay. I appreciate the debate. I appreciate clarification from you. Thank you. I won't let it go until you make me around. All right, so I see my time is up unless you have any other questions I'll rest on the argument and briefs your honors. Thank you. Thank you. Thank you. Thank you. Thank you.  Thank you.